**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE: BOSTON SCIENTIFIC CORP.,
      PELVIC REPAIR SYSTEM
      PRODUCTS LIABILITY LITIGATION
                                       MDL No. 2326
--------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

   *Martha Carlson v. Boston Scientific Corp.*          No. 2:13-cv-05475

**MEMORANDUM OPINION AND ORDER**
(*Defendant's Motion for Partial Summary Judgment*)

Pending before the court is defendant Boston Scientific Corporation's ("BSC") Motion for Partial Summary Judgment on Plaintiff Martha Carlson's Punitive Damages Claim [Docket 36]. For the reasons set forth below, the defendant's Motion for Partial Summary Judgment [Docket 36] is **DENIED**.

**I.    Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the BSC MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate

district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Ms. Carlson's case was selected as a Wave 1 case by the Defendant.

Plaintiff Martha Carlson was surgically implanted with the Uphold Vaginal Support System (the "Uphold") on July 16, 2010. (BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 37], at 2). She received the surgery at a hospital in Charlotte, North Carolina. (*Id.*). Ms. Carlson claims that as a result of implantation of the Uphold, she has experienced various injuries. (First Supp. Pl. Fact Sheet [Docket 37-11], at 6–7). She brings the following claims against BSC: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; and punitive damages. (Short Form Compl. [Docket 1], at 4–5). In the instant motion, BSC moves for partial summary judgment on the grounds that Ms. Carlson's "claim for punitive damages is . . . without evidentiary or legal support." (Mem. in Supp. [Docket 36], at 1).

## II. Legal Standards

### a. Partial Summary Judgment

A partial summary judgment "is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 56 advisory committee's note. A motion for partial summary judgment is governed by the same standard applied to consideration of a full motion for summary judgment. *See Pettengill v. United States*, 867 F. Supp. 380, 381

(E.D. Va. 1994) (citing *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985)). To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor," *Anderson*, 477 U.S. at 256, that is, more than a mere "scintilla of evidence" in support of his or her position, *id.* at 252. Conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

    b. **Choice of Law**

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on

diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as Ms. Carlson did in this case, I consult the choice-of-law rules of the state in which the implantation surgery took place. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Carlson received the implantation surgery in North Carolina. Thus, the choice-of-law principles of North Carolina guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of North Carolina law. North Carolina generally applies the *lex loci delicti* approach, which provides that "the state where the injury occurred is considered the situs of the claim." *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 722–23 (N.C. App. 2010). Here, the alleged injury occurred in North Carolina, where Ms. Carlson was implanted with the allegedly defective device. Thus, I apply North Carolina's substantive law—including North Carolina's punitive damages law—to this case.

### III. Analysis

Under North Carolina law, "[p]unitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages *and* that one of the following aggravating factors was present and was related to the injury . . . . : (1) [f]raud; (2) [m]alice; [or] [w]illful or wanton conduct." N.C. Gen. Stat. § 1D-15 (emphasis added). Critically, the claimant must prove the existence of an aggravating factor—including its connection to the injury—by clear and convincing evidence. *Id.*; *see also Schneck v. HNA Holdings, Inc.*, 613 S.E.2d 503, 508 (N.C. Ct. App. 2008) (dismissing punitive damages claim because the plaintiffs did not present clear and convincing evidence of the connection between the alleged wrongful act and plaintiffs' alleged harm).

Here, Ms. Carlson argues that she has proffered sufficient evidence demonstrating that BSC's conduct was malicious or willful or wanton. (Resp. Mem. in Supp. [Docket 62]). Under North Carolina law, malice "means a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant." N.C. Gen. Stat. § 1D-5(5). For conduct to be willful or wanton, on the other hand, it must create a "conscious and intentional disregard of and indifference to the rights and safety of others." *Id* § 1D-5(7). Willful or wanton conduct must be more than gross negligence. *Id.*

With regard to Ms. Carlson's claim that BSC acted maliciously, the record fails to reveal conduct on behalf of BSC demonstrating "a sense of *personal* ill will" toward Ms. Carlson. N.C. Gen. Stat. § 1D-5(5) (emphasis added). While I have held that ignoring the warning of the Material Data Safety Sheet ("MSDS") constitutes malice under California law, *Sanchez v. Boston Scientific Corp.*, 38 F. Supp. 3d 727, 742 (S.D. W. Va. 2014), the standard I must apply here, as provided under the North Carolina General Statutes, is more stringent. *Compare* Cal. Civ. Code § 3294

5

(defining malice as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others"), *with* N.C. Gen. Stat. § 1D-5(5) (defining malice as "a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant." Indeed, behavior that is "carried on . . . with a willful and conscious disregard of the rights or safety of others" does not automatically reflect, as is required here, "a sense of *personal* ill will" towards Ms. Carlson. Without more, a reasonable juror could not determine that BSC acted maliciously by ignoring the warning of the MSDS.

Next, with regard to any claim of willful or wanton conduct, BSC argues that plaintiff "has done no more than rehash the allegations of her other tort claims." (Mem. in Supp. [Docket 36], at 13). In support of its argument that such evidence is insufficient for a reasonable juror to award punitive damages, BSC argues that, under North Carolina law, "there must be some additional element of asocial behavior [that] goes beyond the facts necessary to create a simple case of tort." (*Id.* (citing *Shugar v. Guill*, 277 S.E.2d 126, 130 (N.C. Ct. App. 1981)). BSC further argues that punitive damages against a corporation are permissible only if "the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." (*Id.* (quoting N.C. Gen. Stat. § 1D-15(c)). Ms. Carlson, on the other hand, relies on my decision in *Sanchez*, 38 F. Supp. 3d at 742, and argues that "[a] reasonable jury could find that by ignoring a warning on the MSDS and failing to conduct clinical testing, BSC's actions were 'despicable conduct' with willful and conscious disregard of the safety of consumers." (Resp. Mem. in Supp. [Docket 62], at 9). Although *Sanchez* did not concern North Carolina law, its reasoning applies with equal force here.

As in *Sanchez*, the MSDS at issue here warned BSC not to implant the material into the human body. (MSDS issued by Chevron Phillips Chem. Co. for Marlex Polypropylenes (All Grades) (Jan. 28, 2004) [Docket 62-6], at 1). Specifically, the warning provided:

> MEDICAL APPLICATION CAUTION: Do not use this Chevron Phillips Chemical Company LP material in medical applications involving permanent implantation in the human body or permanent contact with internal body fluids or tissues.

*Id.* Despite this warning, BSC used the Chevron Phillips polypropylene in the Uphold device. (*See* Miragliuolo Dep. [Docket 62-4], at 85:14–86:6; Intoccia Dep. [Docket 62-5], at 133:9–133:12).

Additionally, Ms. Carlson references the written agreement between BSC and its polypropylene supplier, which cautioned BSC to make its own determination of the safety and suitability of the polypropylene material in its products. (Resp. Mem. in Supp. [Docket 62], at 10). The agreement provided:

> BEFORE USING ANY PSPC POLYPROPYLENE PRODUCT, BOSTON SCIENTIFIC IS ADVISED AND CAUTIONED TO MAKE ITS OWN DETERMINATION AND ASSESSMENT OF THE PSPC POLYPROPYLENE PRODUCT FOR USE BY, FOR OR ON BEHALF OF BOSTON SCIENTIFIC. IT IS THE ULTIMATE RESPONSIBILITY OF BOSTON SCIENTIFIC TO ENSURE THAT THE PSPC POLYPROPYLENE PRODUCT IS SUITED TO BOSTON SCIENTIFIC'S SPECIFIC APPLICATION.

(Agreement between BSC and Chevron Phillips Chem. Co. [Docket 62-8]). Despite this agreement, evidence suggests that BSC performed no clinical testing on the Uphold prior to releasing the product to the public. (*See* Connor Dep. [Docket 62-11], at 102:3–102:15, 210:15–211:6) (explaining that there were no Boston Scientific-sponsored studies on the Uphold in 2009).

In light of this evidence, I **FIND** that there is a genuine dispute of material fact with regard to the existence of an aggravating factor under North Carolina General Statute § 1D-15. Under a clear and convincing standard, a reasonable juror could find that by ignoring a warning on the MSDS and neglecting to conduct clinical studies, BSC's actions were taken with a "conscious and

7

intentional disregard of and indifference to the rights and safety of others." N.C. Gen. Stat. §§ 1D-5(7), 1D-15. Accordingly, BSC's motion for summary judgment on the issue of punitive damages is **DENIED**.

### IV.     Conclusion

For the reasons set forth above, the defendant's Motion for Partial Summary Judgment [Docket 36] is **DENIED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     April 17, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE